71185. BORING v. McPHERSON et al.
(344 SE2d 459)

DEEN, Presiding Judge.

The appellees, Louise McPherson and her daughter, brought this action against the appellant, Don Boring, seeking damages for personal injuries sustained when they were bitten by a horse that they had bought from the appellant at an auction. Boring brings this appeal from an adverse jury verdict, and the denial of his motion for new trial.

1. Appellant's first four enumerations of error challenge certain portions of the trial court's charge to the jury. No objections were raised to the charge at trial, but appellant now asserts that the por-

tions of the charge here objected to were harmful as a matter of law. See OCGA § 5-5-24 (c).

The trial judge inquired as to whether defendants had *any* exceptions to the charge and counsel replied: "None, Your Honor." In the case cited in the dissenting opinion, *Central of Ga. R. Co. v. Luther*, 128 Ga. App. 178, 184 (196 SE2d 149) (1973) which is a civil case, a new trial was disallowed based on failure to make exceptions: "In compliance with our modernized procedure which eliminated 'sandbagging' the trial judge through subsequent microscopic inspection for errors in his charge, we now require counsel to state in open court their exceptions at its conclusion. Code Ann. § 70-207 (a)." (The court in the cited case on page 184 defined "sandbagging" as "Poker parlance but more expressive than 'ambush.'")

*Luther* further held on page 180: "In *Nathan v. Duncan*, 113 Ga. App. 630 (149 SE2d 383) this court stated the philosophy with which the appellate courts should consider an appeal where errors in a charge are asserted but without counsel having taken exception as required by Code Ann. § 70-207 (a, b). It was there stated at p. 638 that 'It is the view of this court that the error in that frame of reference is not harmful unless a gross miscarriage of justice attributable to it is about to result. Generally, if counsel, who are skilled and trained in the law and who have prepared and tried the case, fail to see the error and enter an exception as provided in subsections (a) and (b), it is not to be regarded as harmful. Instances when the charge will be found ground for reversal under subsection (c) are likely to be *very, very rare.*'" (Emphasis supplied.)

2. The evidence of record is sufficient to support the verdict. In particular, we note in reference to Subdivision E of appellant's fifth enumeration that the verdict does not support his allegation that appellee Ann Laird McPherson was awarded any amount for future medical expenses. Also, as to Subdivision G, it is apparent in light of the trial court's charge that the portion of the jury's verdict awarding $20,000 for "lost future wages" in favor of Louise McPherson was in fact not an award for diminution of her capacity to earn money but rather was an award for loss of capacity to work, an item of general damages measured by the enlightened consciences of the jurors. As such, there was no need for appellee Louise McPherson to produce evidence of the pecuniary value thereof. See *Wright v. Lail*, 219 Ga. 607 (135 SE2d 418) (1964). Compare *McDuffie County v. Rogers*, 124 Ga. App. 442 (3) (184 SE2d 46) (1971).

*Judgment affirmed. Banke, C. J., McMurray, P. J., Birdsong, P. J., Carley and Benham, JJ., concur, and also concur specially. Deen, P. J., also concurs specially. Sognier, Pope, and Beasley, JJ., dissent.*

CARLEY, Judge, concurring specially.

I agree with the result reached by the majority and in the analysis set forth in the majority opinion. However, I believe it to be fair and just to point out that appellate counsel, who effectively and persuasively presented appellant's case to this court to the greatest extent possible on the existing record, was not the attorney who tried the case below.

I am authorized to state that Chief Judge Banke, Presiding Judge Deen, Presiding Judge McMurray, Presiding Judge Birdsong and Judge Benham join in this special concurrence.

POPE, Judge, dissenting.

I respectfully dissent. Appellant's first four enumerations of error challenge certain portions of the trial court's charge to the jury. No objections were raised to the charge at trial, but appellant now asserts that the portions of the charge here objected to were harmful as a matter of law. See OCGA § 5-5-24 (c). Essentially, appellant asserts that there was no evidence to support these charges. " 'The evidence to authorize a jury instruction need not be substantial or direct; it is enough if there is even slight evidence consisting of inferences drawn from the testimony.' [Cits.]" *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (250 SE2d 851) (1978). Applying this standard to the evidence of record on appeal, I am constrained to agree in part with appellant's assertions.

(a) FRAUD. The claimed fraud in this case was the failure of appellant to disclose to appellee Louise McPherson, an experienced horsewoman who was purchasing the 6-year-old stallion, that the horse was vicious and dangerous because he had a history of attacking and biting people. Appellant's first enumeration assigns error to the trial court's jury instructions on actual and constructive fraud as well as the instructions on wilful misrepresentation of a material fact.

Construed in the most favorable light to support the charges and verdict, the evidence shows that prior to the incidents which injured appellees (after the horse had been transported to McPherson's stable the day after the purchase), there were three instances where this stallion had attacked and bitten or attempted to bite people. A former owner of the horse testified that when he bought the horse from appellant in December 1980 through appellant's business partner at whose farm in Pennsylvania the horse was then kept, the horse reacted to the whip (apparently without its even touching him) and ran into the owner's son, knocking him down and biting him on the chest; however, medical attention was not required. This occurred two or three weeks after he had purchased the horse. On another day a short time later the horse tried to bite another son who had gotten the whip in preparation to ride, but the attempted bite did not break any flesh

due to the winter jacket the son was wearing at the time. In addition to the owner, others in the family had ridden the horse without incident. However, because the new owner was getting older and had suffered a heart attack several years previously, he called appellant's partner and returned the horse for a refund, explaining that the stallion was too much for him and had a "couple of bad habits, or at least a bad habit, and I thought it would be best if they would take him back." He also testified that "many" stallions will nip you but this stallion's reaction to the sight of the whip was "uncommon." Appellant testified that he was not sure that he was aware of these biting incidents at the time he sold the horse to McPherson. The third incident was a nip or bite on the arm of appellant's wife, of which McPherson was informed during a conversation with appellant and his wife shortly after McPherson had bought the horse at auction. McPherson testified that appellant's wife told her that "it was just a little nip that didn't amount to anything" because the horse had been in the "turnaround" exercise area all day and could see the mares. At trial appellant's wife testified that she cautioned McPherson to keep her other horses out of the sight of the stallion because it had bitten her on the arm when it had seen the mares at her farm. In either event, McPherson did not investigate the subject further. Following the incidents in which appellees were injured, a veterinarian was called to tranquilize the stallion. He described the horse as "abnormal," having "the wild, killer look about him . . . looking for trouble." He considered the horse to be dangerous.

The stallion was advertised as primarily for breeding purposes and that specifically was the purpose for which McPherson bought it. No representations were made about the horse's temperament, and no inquiry other than as stated was made. There is no evidence that appellant represented that the stallion did not bite or had not bitten or had not exhibited any signs that would lead a person to believe that it would bite. In purchasing the horse McPherson relied on the uncatalogued sale description and the showing of the horse at the auction. Her bid of $600 was accepted.

In my view, the evidence fails to show that appellant ever made a wilful misrepresentation to McPherson concerning the stallion, and nowhere does the evidence show that McPherson ever relied upon any representation made by appellant as to the stallion's temperament. Accordingly, the trial court's charge in this regard was erroneous. However, I cannot say as a matter of law that the evidence also fails to show fraud under the theory of failure to disclose a material fact. "To support an action of deceit on the grounds of failure to disclose a material fact, the evidence must show that there was a concealment of a material fact, that such concealment was done to induce another to act and that it was done in such a manner as to deceive and mislead."

*Jackson v. Smith,* 94 Ga. App. 697, 701 (96 SE2d 193) (1956). While it could have found otherwise, the jury was authorized to conclude from the evidence that appellant knew or should have known that the stallion had propensities for viciousness even beyond those usual for such animals; that appellant intentionally or carelessly made no mention of these propensities at the time of sale to induce her to buy the horse; and that McPherson was misled thereby. Although the court is not called upon in this appeal to pass upon the appropriateness of jury instructions relating to fraud for failure to disclose a material fact, I am persuaded that the evidence was sufficient to support the trial court's more general instructions on actual and constructive fraud.

(b) LIABILITY OF OWNER OF DANGEROUS ANIMAL. Error is also assigned to the trial court's charge of OCGA § 51-2-7: "A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act shall be liable in damages to the person so injured." There is no question that this horse was vicious and dangerous after appellees got it home, so the jury might well have applied the charge. However, the Code section is not relevant because it relates to the duty of an owner or keeper of such an animal who, by careless management of it or by allowing it to go loose, causes injury. Appellant was not the owner or keeper of the horse when the injury occurred. Also, there is no evidence of careless management of the horse while he was the owner which would have caused the injury. Therefore, I view the trial court's charge of this Code section as erroneous.

(c) NEGLIGENCE. The evidence of record as noted above is sufficient to support the trial court's general instructions on negligence. See OCGA §§ 51-1-2 and 51-1-8; *Everhart v. Rich's,* 229 Ga. 798 (1) (194 SE2d 425) (1972). See also *Key v. Bagen,* 136 Ga. App. 373 (1) (221 SE2d 234) (1975). See generally *Patillo v. Thompson,* 106 Ga. App. 808 (4) (128 SE2d 656) (1962).

(d) PUNITIVE DAMAGES. It follows from the foregoing subdivisions that the trial court did not err in charging the jury as to aggravated or punitive damages. See OCGA § 51-12-5. See also *Battle v. Kilcrease,* 54 Ga. App. 808 (4) (189 SE 573) (1936).

(e) I cannot conclude on the basis of the record here that the jury instructions found erroneous were not of a kind which were likely to unduly influence the jury. Nor do I believe that these instructions were not so prejudicial so as to raise a question as to whether appellant has been deprived of a fair trial. Cf. *Central of Ga. R. Co. v. Luther,* 128 Ga. App. 178 (1) (196 SE2d 149) (1973). Accordingly, appellant is entitled to a new trial.

I am authorized to state that Judge Sognier and Judge Beasley

join in this dissent.

DECIDED MARCH 21, 1986 —
REHEARING DENIED APRIL 4, 1986 —

*Tom Pye,* for appellant.
*Jack O. Morse,* for appellees.